## BECHT v. BECHT et al., Plaintiffs in Error.

### Division One, May 21, 1902.

1. **Deed to Husband: POSSESSION: LACHES.** A wife, as a ground for asking to have set aside a conveyance of her own land, made through a third party, to herself and her husband and the survivor of them, alleged that she did not know that the deed had ever been made until about a year before she brought suit. The evidence showed that, after she and her husband had acknowledged the deed to the third party before a notary, and another had been made to them, they were turned over to her, and kept by her for eighteen of the twenty-two years which intervened between their execution and the bringing of the suit. *Held,* that the law imputes knowledge of the existence of the deeds to her under the circumstances, and therefore she has slept too long on her rights to be permitted to maintain the action.

2. ———: EXECUTION: ABILITY TO READ AND WRITE: INFERENCE: MARK. It does not follow that because a woman can not read and write, and because she usually employs a cross for her signature, that she can not sign her name, for it is a matter of common knowledge that there are persons who can sign their names in a fair and legible hand who can not read or write anything else.

3. ———: ———: ———: RATIFICATION: DELIVERY. Where the plaintiff contends, *arguendo,* that the deed was read to her in English, when she did not understand English, and that the deed was not signed by mark when she could not read and write and usually employed a cross for her signature, and the notary positively says she did sign the instrument in his presence, and other witnesses show that she had signed a note for borrowed money, and others testify that the deed was explained to her in her own language before she executed it, there is no place in the case for discussion of the question as to whether or not acknowledgment and

delivery of a deed, where the grantor's name is signed by another, by authority under seal, or in the grantor's presence by parol authority so to do, amounts to a ratification of the signature.

4. ————: NEW GROUNDS ON APPEAL: DURESS: NO OBJECTION. Where the wife's grounds pleaded for setting aside a deed to her husband, are that she never signed it at all, and did not know that it had been signed until a short time before the trial, and the case is disposed of on that ground in the trial court, the Supreme Court will not let the judgment for her stand on the theory that the evidence shows that it was obtained by the threats and other duress of her husband, and that this evidence was admitted at the trial without objection. The case will be disposed of on appeal on the same theory on which it was determined below.

Appeal from St. Louis County Circuit Court.—*Hon. Rudolph Hirzel,* Judge.

REVERSED AND BILL DISMISSED.

*Buell L. Matthews* and *John W. Booth* for plaintiffs in error.

In addition to the prima facie proof that plaintiff signed the deed of conveyance to Zeller, which is afforded by the certificate of her acknowledgment of that deed, the weight of the evidence goes to establish the fact that she did actually sign it. There is nothing to the contrary save her own testimony that she did not sign, corroborated to some extent by evidence to prove that she could not write.

*Zach J. Mitchell* for defendant in error.

The finding and decree is in harmony with the evidence and the law of the cases of Shroyer v. Nichols, 55 Mo. 267; Shanklin v. McCracken, 151 Mo. 587; Dalrymple v. Craig, 147 Mo. 346; Hanley v. Hartley, 143 Mo. 216; Swan v. Stevens, 143 Mo. 384. It comes within the rule as laid down in Springfield Thres. Co. v. Donovan, 147 Mo. 622. No

third party interests having intervened, the decree of the learned trial judge should be affirmed.

MARSHALL, J.—This is a bill in equity to set aside a deed from Susannah Becht and Wolfert Becht to Michael Zeller, and also a deed from Michael Zeller and wife to Susannah Becht and Wolfert Becht, both deeds being dated August 24, 1876, both recorded on September 8, 1876, at 10:25 a. m., and both conveying the same property, to-wit, fifty acres in Carondelet township, St. Louis county, being the southeast fractional quarter of section seven, township forty-three north, range six, and the most northern part of United States survey No. 993.

The petition charges that Mrs. Becht never signed or executed the deed to Zeller, and never knew that it was executed until within a year before this suit was instituted, in April, 1898, but that Wolfert Becht executed it or caused it to be executed with intent to cheat and defraud the plaintiff. The petition further charges that the deed from Zeller and wife to Susannah Becht and Wolfert Becht was without consideration, and was for the sole purpose of consummating the fraudulent purpose aforesaid, and was also unknown to the plaintiff until within the year next before the institution of this suit. The answer of Wolfert Becht is a general denial. Zeller's answer is a general denial, with a special plea that the deeds in question were made at the special instance and request of Mrs. Becht.

The trial court found the issues in favor of the plaintiff, set aside the deeds, and revested the title in the plaintiff. The defendant appealed.

I.

The plaintiff, Susannah Becht, is the wife of the defendant, Wolfert Becht. They were married about 1865 or

1866. The record contains just enough to show that about 1895 there was a suit for divorce begun, but as the trial court found that the plaintiff was the wife of the defendant, Wolfert Becht, on the twenty-fourth day of August, 1876, when the deeds in question were made, "and still is the lawful wife of the defendant, Wolfert Becht," it would seem that nothing came of the divorce suit. At the time of the marriage the plaintiff owned the land in controversy, and the fee simple title was vested in her, and it continued so to be vested until August 24, 1876, when Mrs. Becht and her husband conveyed the land to Michael Zeller, and he and his wife conveyed it to Wolfert Becht and Susannah Becht "as joint tenants, for and during their natural life, and to the survivor of them for and during his or her natural life and to the heirs of such survivor forever." The title remained so vested from August 24, 1876, until the decree herein, on May 23, 1898, and for about eighteen years of that time after the two deeds in question had been duly executed, delivered and re- corded, they remained in the possession of the plaintiff.

The findings of fact by the chancellor, in equity cases, are entitled to great respect and are generally deferred to by an appellate court, but they are not conclusive upon the appellate court, because the final power, and hence, the ultimate re- sponsibility, rests on the court of last resort, to see that jus- tice is properly administered in each case. Fully mindful of these principles, it is impossible to permit the decree of the trial court in the case at bar to stand. The petition pleads *non est factum* as to the deed from Susannah and Wolfert Becht to Michael Zeller, and that it was fraudulently exe- cuted by Wolfert Becht, or caused to be so executed by him, for the purpose of cheating the plaintiff, and that the plain- tiff was in total ignorance of the fact that it was executed until within a year before this suit was instituted in 1898. There is not only no evidence whatever to support this charge, which was found by the trial court to be true, but on the con-

trary, it clearly and conclusively appears that Mrs. Susannah Becht knew the deeds were to be made before they were made, was present when they were made, acknowledged the deed to Zeller before the notary, took the deeds from her husband's possession after they were executed, delivered and recorded, kept them in her exclusive possession for over eighteen years, and discussed the fact that they had been executed with her friends, George Kerth and his wife and with George Waldorf, and told them that she had to sign the deed "in order to have peace," and told them she was sorry she had executed the deed, and complained to them many times about it. But this is not all. Mrs. Becht herself testified that she knew all about the deeds, was present when they were executed, and acknowledged the deed to Zeller, but she says she was forced to execute the deed because her husband threatened to kill her if she did not do so. True, she said the deed was read to her in English, and she did not understand English, and she also repeated over and over again that she could not read or write in English or in German, and that she could only sign her name with a "criss-cross," and the deed to Zeller was not so signed, and therefore she testified, *arguendo,* that she never signed the deed. But while she so testified she also admitted, and she likewise proved by Zeller, whom she called as a witness in her behalf, that the deed to Zeller was executed in this way: She and her husband went to Zeller, their friend, and told him they wanted the title so fixed that it would be vested in them both as long as they lived and would go to the one who outlived the other. Zeller was a merchant, and he told them he did not understand such matters and advised them to see Hill & Hammel, who were in the real estate business, about it, which they did, with the result that Hammel advised them to transfer the property to Zeller and have him reconvey it to them as they desired. They returned and told Zeller the result. At first he refused to have anything

Vol 168 mo—34.

to do with it, because there was "nothing in it for him," and he did not want to have the trouble, but upon their agreeing that they would pay all the expenses and asking him to do it as a favor, and because they dealt at his store, he agreed to become the conduit. The whole matter was discussed in German, and Zeller asked Mrs. Becht several times if she was satisfied with the contemplated arrangement, and she said she was, and that it was best to have the title placed in that way. A few days thereafter the plaintiff and her husband, and Zeller and his wife, went together to the office of Hill & Hammel. The deeds had been prepared and were then executed and acknowledged by the parties, the wives being examined separate and apart from their husbands, and the notary says the deeds were read to the plaintiff in English and explained to her in German. The plaintiff does not deny any of these facts except that she says the deeds were read to her in English, and except that she says, *arguendo,* she did not sign the deed because she can not write and can only make her mark, and this deed is not signed with a mark. The plaintiff produced witnesses who testified that she can not read or write, while the defendant produced a witness who testified that the plaintiff signed her name to a note for money borrowed from her, and the notary testified that she signed her name to this deed, in his presence.

Under these circumstances it is not necessary in this case to investigate or decide the much-discussed question as to whether acknowledgment and delivery of a deed where the grantor's name is signed by another, by authority under seal, or in the grantor's presence by parol authority so to do, amounts to a ratification of the signature or not. There is a great diversity of opinion, adjudication and precedent upon this question, which the inquiring legal mind will find collated in 9 Am. and Eng. Ency. Law (2 Ed.), pp. 143-4-5, and cases cited in notes.

Becht v. Becht.

It may be true that the plaintiff can not either read or write English or German, and that she usually employs a cross for her signature. Yet it may also be true that she can sign her name, for it is a matter of common knowledge that there are persons who can sign their names in a fair and legible way, who can not read or write anything else. All the plaintiff and all her witnesses say may be strictly true, and yet it may also be true that the plaintiff belongs to the class here spoken of, and her manner of testifying as to the execution of this deed, produces a strong suspicion, if not an actual conviction, that such may be the fact here. But whether this is so or not, it is nevertheless true that the plaintiff did know all about the execution of the deeds before they were made and afterwards, and that she participated in the execution thereof and had the deeds in her possession for over eighteen years after they were executed. So that the allegation in the petition that she was in total ignorance of their execution until within a year before this suit was commenced is wholly without foundation in the facts. Clearly, therefore, she has slept on her rights for so long a time that she is not entitled to the aid of a court of equity.

The evidence adduced wholly fails to support the allegation of the petition and the finding of the court, that the plaintiff never signed and executed the deed to Zeller. On the contrary, the testimony clearly shows that she not only knew all about the deeds, had possession of them for years, consulted and talked to her friends about the fact that the title had been placed in this shape, regretted that she had done so, but said over and over again that she had done it in order to keep peace in the family, and that if she had it to do over again or if she had known her husband intended to swindle her she would not have done it. And it was not until the trial which took place about twenty-two years after the deeds were made, that she ever asserted or claimed that she executed the deed under

duress, upon the threat of her husband that he would kill her if she did not do so. If it be said that this constitutes a departure from the allegations of the petition, and that no objection was made or exception saved thereto by the defendant, and, hence, the plaintiff is entitled to have the deed set aside because procured by duress, it nevertheless remains that the circuit court did not proceed upon this theory, but on the contrary rested its decree upon its finding of fact that the plaintiff never signed or executed the deed and was in total ignorance that it had been done until within the year before this suit was commenced. Hence, the judgment below can not be helped out by this theory, and this court will not, in this case, resort to such a theory to sustain this judgment.

The facts force the conclusion upon the judicial mind that the title was placed where it is, by the deliberate act of the parties, that it has been knowingly allowed to so remain for nearly a quarter of a century, that until discord arose between plaintiff and her husband, resulting in a suit for divorce, there was no question as to the execution of the deeds, the status of the title, or the fact that the title was just where the parties themselves intentionally placed it. The deed was made ten or eleven years after the marriage, and was not the result of sudden impulse or overpersuasion, or caused by excessive or impassioned, newly-acquired, connubial ecstacy. The fires of youth and love had glowed and smouldered for over a decade on the conjugal hearthstone, and the shrinking, trusting maiden of sixteen had become the settled and sober, matron of twenty-six before this title was divested, by her own act, out of herself and vested in herself and her husband.

If this deed was procured by duress, it should be set aside, but before this is done a proper case must be presented and made for relief on such a ground. Appropriate averments must be made and clearly-defined issues must be joined. No such conditions are presented by this record. The evidence adduced wholly fails to sustain the issues joined, and no

legal ground appears for setting aside the deliberate act of the parties in vesting the title as it now stands.

For these reasons the judgment of the circuit court is reversed and the bill dismissed.   All concur.